IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

KENT FALWELL, DORLENE FALWELL,     *
AND THE FALWELL FAMILY             *
PARTNERSHIP BY KENT FALWELL, JR.,  *
GENERAL PARTNER,                   *
                                   *
            Plaintiffs,            *
                                   *
vs.                                *     No. 4:06cv00609 SWW
                                   *
                                   *
                                   *
AMERICAN SHALE RESOURCES, LLC,     *
                                   *
            Defendant.             *

MEMORANDUM AND ORDER

    This action involves a dispute over the validity of an Oil and Gas Lease between

plaintiffs, Kent Falwell, Dorlene Falwell, and the Falwell Family Partnership by Kent Falwell,

Jr., General Partner (collectively, "the Falwells"), and defendant, American Shale Resources,

LLC ("American Shale").  This action was originally filed in the Circuit Court of White County,

Arkansas, but was removed to this Court by American Shale on May 24, 2006.  The matter is

now before the Court on motion of American Shale for summary judgment [doc.#13].  The

Falwells have responded in opposition to American Shale's motion, and American Shale has

filed a reply to the Falwells' response.  For the reasons that follow, the Court finds that

American Shale's motion for summary judgment should be and hereby is denied.


I.

    On September 15, 2005, the Falwells executed an Oil and Gas Lease ("Lease") with

American Shale for certain mineral rights concerning lands lying within White County,

Arkansas.  The Lease was "paid up" with no delay rentals.  As consideration for the Lease, American Shale provided the Falwells with two checks for immediate payment representing 30% of the estimated total consideration due, and two 30-day sight drafts for the remaining 70% of the estimated total consideration due.[1]

The first check was made payable to Kent Falwell and Dorlene Falwell in the amount of $4,800.00, and the second check was made payable to the Falwell Family Partnership in the amount of $91,626.00.  Notations on both checks state that the checks were for "[d]own payment on oil gas lease.  Remainder due upon net mineral determination."

The first sight draft was made payable to Kent Falwell and Dorlene Falwell in the amount of $11,200.00, and the second sight draft was made payable to the Falwell Family Partnership in the amount of $213,794.00.  On the face of each sight draft was a memorandum stating "[c]onsideration for balance due on Oil and Gas Lease to be adjusted based on net mineral acres, at a price of $200.00 per net mineral acre."  Each sight draft was payable "[u]pon payor's acceptance, on or before <u>30</u> days after sight and subject to approval of title."

American Shale states that before delivering the instruments to the Falwells, Gordon Deen, President of American Shale, explained that the title work was of utmost importance and down payment would not be made until it was completed.  American Shale states that the parties agreed that if the title work showed any discrepancies between the estimated ownership and actual ownership, then the sight drafts would be cancelled and American Shale would pay by

---

[1] Paragraph 3 of the Lease provides that "[t]he consideration paid to Lessor for this lease includes consideration in lieu of delay rental provisions and the rights and obligations of the parties hereunder shall be the same as if this lease contained provisions for the payment of periodic delay rentals throughout the primary term hereof and each such delay rental had been timely paid and accepted by Lessor."  This paragraph makes clear that the consideration paid up front in lieu of delay rentals is to be for the entire primary term of the Lease – "as if" all delay rentals had been timely paid – in order to avoid the perils of an inadvertent failure to properly make payment of delay rentals and to allow American Shale all of the primary term within which to commence drilling operations.

separate check for only the actual amount due.  The Falwells state, however, that in the discussions leading up to the execution of the Lease, Deen did not say anything related to the title work other than it would need to be performed and that American Shale would pay for the actual mineral acres owned if there was any discrepancy in the title to some of the property. Nor, state the Falwells, did Deen state that final payment would not be made until the title work was completed or that the drafts could be withdrawn and payment could be made at a later date by check.  Rather, the Falwells state that Deen urged them to lease their mineral rights to American Shale because, unlike other companies which issued 60- and 90-day drafts, American Shale issued 30-day drafts, and he stated that the Falwells would have the balance of their bonus payments within thirty days.  The Falwells state that at the time of the negotiations with American Shale, several other potential leasing companies expressed interest in leasing the Falwells' lands and that they relied on the thirty day period for receiving the balance of their bonus payments as a material reason for choosing to lease to American Shale over competing companies.

The sight drafts were presented to Regions Bank in Mobile, Alabama ("Regions"), on September 20, 2005, and marked by Regions for November 2, 2005, thirty "banking days" later. In the meantime, American Shale ordered title work on the Falwell property from a title company in White County, Arkansas.  On October 26, 2005, prior to completion of the title work, American Shale recorded the Lease with the White County Circuit Clerk.

On November 2, 2005, the title work had not been completed and the Falwells contacted Regions that same day and cancelled the sight drafts upon being informed the drafts had not been paid.  Also that same day (or "[i]ronically" as stated by American Shale), Rand Roan, an agent

3

for American Shale, wrote Deen's secretary an e-mail instructing her to withdraw the Falwells'

sight drafts from Regions, stating as follows: "In regards to the Falwell draft, please tell Regions

to withdraw the draft.  I just spoke with Rick Roller; he says there are mineral reservations by 3rd

parties on the lease.  Upon completion of the title check, we will pay them by check."  American

Shale, through its attorney Bay Fitzhugh, thereupon sent a fax to Regions requesting that

Regions withdraw the sight drafts.

Regions returned the two sight drafts unpaid to the Falwell's bank, Citizens State Bank of

Bald Knob, Arkansas, by transmittal letters dated November 2, 2005.  The transmittal letters

provide that Regions was returning the two sight drafts to Citizens State Bank pursuant to "your

customer [the Falwell's] request."

The following day, November 3, 2005, Timothy F. Watson, an attorney for the Falwells,

wrote American Shale stating that the Falwells were rescinding the Lease as more than thirty

days had expired since presentation of the drafts to Regions and that Regions had been instructed

to return the drafts, unpaid, to the Falwells' bank.  Enclosed with the letter was a check payable

to American Shale in the sum of $96,426.00 representing the estimated 30% down payment

made by American Shale to the Falwells on September 15, 2005.

American Shale apparently did not immediately respond to Watson's November 3rd

rescission letter.  Rather, by letter dated November 15, 2005, Deen sent two checks "[p]er our

agreement" to the Falwells representing final consideration for the actual mineral acres owned.

In the letter, Deen explained that the title work was "very complicated and took much more work

and time than normal to complete."  Deen explained that several tracts were found to have

mineral reservations made prior to the Falwells' ownership therefore resulting in a net reduction

in mineral ownership of the Falwells and corresponding payment due to the Falwells from American Shale.[2]  In this respect, American Shale states that according to the Falwells' mineral ownership determined by the title work, the $96,426.00 paid to the Falwells by American Shale on September 15, 2005 actually represented a 38% down payment on the Lease.

Weeks after the Falwells had given notice of rescission to American Shale and tendered back the amounts previously received as partial payments, American Shale still had not released its claim to the mineral rights at issue.  Accordingly, the Falwells, by letter to Deen dated December 21, 2005, demanded that American Shale execute and place on record a release of the Lease.  American Shale failed to take such action and the Falwells filed this action asserting that the failure of American Shale to honor the sight drafts in the time and manner required by their terms and by law rendered the Lease null and void at the option of the Falwells, and that the Falwells are entitled to a mandatory injunction directing American Shale to execute and file of record a release of their property.

II.

American Shale moves for summary judgment on what it states are three adequate and alternative grounds: (1) the full payment of consideration was conditioned upon completion of the title work within a reasonable time, not upon the expiration of thirty days; (2) the undisputed facts do not warrant the remedy of rescission; and (3) the Falwells have failed to act in accordance with the terms of the Lease governing notice of alleged breach and are therefore not entitled to rescind the Lease.  American Shale argues there are no genuine issues for trial with

---

[2] Enclosed with the two checks was 20 days of interest at 6% on the balance due "as a courtesy for the need to extend past the 30 day estimate."

respect to any of these issues and that it is entitled to summary judgment as a matter of law.


## A.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for summary judgment, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  The nonmoving party may not rest on mere allegations or denials of his pleading, but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id*. at 587 (quoting Fed.R.Civ.P. 56(e) and adding emphasis).  *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita*, 475 U.S. at 587 (citations omitted).  However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id*. (citation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.  "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

B.

1.

The parties do not dispute that the consideration to be paid under the sight drafts would be based on the Falwells' actual acreage or "net mineral determination" as determined by the title work.  The question posed by the parties, rather, is whether the language on the face of the sight drafts providing that each sight draft was payable "on or before <u>30</u> days after sight and subject to approval of title" meant, as claimed by American Shale, that payment of the site drafts was conditioned upon completion and approval of the title work within a reasonable time and not on or before thirty days, or whether, as claimed by the Falwells, that American Shale had thirty days after sight or presentment to pay the sight drafts (with the right to adjust the amount due for title discrepancies) or reject the transaction for lack of title approval.[3]

a.

Because American Shale and the Falwells executed the Lease, the two checks for immediate payment, and the two sight drafts at the same time and for the common purpose of leasing lands for oil and gas exploration, these instruments, all of which were prepared by American Shale, are read and construed by this Court as if they were one instrument.  *See Sorrells v. Bailey Cattle Co.*, 268 Ark. 800, 810, 595 S.W.2d 950, 955 (1980) (in the absence of anything to indicate a contrary intention, "instruments executed at the same time, by the same

---

[3] Under the Uniform Commercial Code as adopted in Arkansas, "[i]f a draft is payable on a date stated in the draft, the draft is dishonored if (i) presentment for payment is duly made to the drawee and payment is not made on the day the draft becomes payable or the day of presentment, whichever is later ..."  Ark. Code Ann. § 4-3-502(b)(3).  The Falwells dispute whether it was proper to calculate the thirty-day period set forth in the sight drafts using "banking" days, *i.e.*, days on which banks are open for business as opposed to consecutive calendar days.  Such dispute has no real bearing on the issues to be decided on summary judgment, however, as payment under the sight drafts was not made within the thirty-day period following presentment, whether it be calculated using banking days or consecutive calendar days.

parties, for the same purpose, and in the course of the same transaction, are, in the eye(s) of the law, one instrument, and will be read and construed together as if they were as much one in form as they are in substance") ((quoting *Rawleigh v. Wilkes*, 197 Ark. 6, 121 S.W.2d 886 (1938)). An instrument is to be construed most strongly against the party that prepared it. *Harris v. Stephens Production Co.*, 310 Ark. 67, 72, 832 S.W.2d 837, 840 (1992).  In construing the contract between the parties, this Court must give the language employed the meaning which the parties intended and must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain, ordinary meaning. *First National Bank of Crossett v. Griffin*, 310 Ark. 164, 169, 832 S.W.2d 816, 819 (1992) (citation and internal quotation marks omitted).  This Court must look to the contract as a whole and the circumstances surrounding its execution to determine the intention of the parties. *Id.* 310 Ark. at 170, 832 S.W.2d at 820. Different clauses of a contract must be read together and the contract construed so that all of its parts harmonize, if that is possible, and a construction that neutralizes any provision of a contract should never be adopted, if the contract can be construed to give effect to all provisions. *Tyson Foods, Inc. v. Archer*, 356 Ark. 136, 144, 147 S.W.3d 681, 685-86 (2004) (citations omitted). In addition, it is a general proposition of the common law that in the absence of fraud, accident or mistake, a written contract merges, and thereby extinguishes, all prior and contemporaneous negotiations, understandings and verbal agreements on the same subject. *Griffin*, 310 Ark. at 168, 832 S.W.2d at 819 (citation and internal quotation marks omitted).  Where, however, the Court determines as an initial matter that there exists an ambiguity, parol evidence is admissible and the meaning of the ambiguous term becomes a question of fact for the factfinder. *Id.* 310

Ark. at 169, 832 S.W.2d at 819 (citation omitted).[4]

b.

Construing the Lease, checks, and sight drafts as one instrument, and giving effect to all its provisions, this Court finds no ambiguity in any of the terms concerning the present dispute. Nothing in those instruments provide that the sight drafts could be cancelled and new checks issued if there was a delay in the completion of the title work, and the sight drafts are unambiguous in providing that payment had to be made on or before thirty days after sight or presentment. The notations on the checks stating that the "[r]emainder" of the consideration would be "due upon net mineral determination" is consistent with and compliments the language in the sight drafts that the final amount would "be adjusted based on net mineral acres" and "subject to approval of title," the only additional requirement being that final payment upon such "determination"/"adjust[ment]" and "approval of title" occur on or before thirty days after sight or presentment. *Cf. St. Romain v. Midas Exploration, Inc.*, 430 So.2d 1354, 1358 (La.App. 3rd Cir. 1983) (where sight draft was payable "subject to title and <u>30</u> days sight" court determined that "[t]he contract circumstances and the lease agreement indicate that the intent of the parties was to enter into a mineral lease subject only to the condition that appellant's title to the property be approved within a period of 30 days after deposit of the sight draft"). As such, the requirements of the sight drafts that the final amount of consideration be paid "on or before <u>30</u> days after sight and subject to approval of title" constituted a condition precedent to there being

---

[4] Language in a contract is ambiguous when there is doubt or uncertainty as to its meaning or it is fairly susceptible of two interpretations. *Denton v. Pennington*, 82 Ark.App. 179, 183, 119 S.W.3d 519, 521 (2003). Ambiguities in an oil and gas lease should be construed in favor of the lessor and against the lessee. *Hanna Oil and Gas Co. v. Taylor*, 297 Ark. 80, 82, 759 S.W.2d 563, 565 (1988).

a binding Lease between the parties.  *Cf. Souter v. Witt*, 87 Ark. 593, 111 S.W. 800, 802-03

(1908) ("when a contract is made to depend on a condition precedent – in other words, when no

right shall vest until certain acts have been done, as, for example, until the vendee has paid

certain sums at certain specified times – then also a court of equity will not relieve the vendee

against the forfeiture incurred by a breach of such condition precedent").  American Shale had

thirty days after sight or presentment to pay the sight drafts (with the right to adjust the amount

due for title discrepancies) or reject the transaction for lack of title approval.

American Shale agrees that "language contained on the sight drafts evidence that

payment of the sight drafts was conditioned on approval of title" and that "[t]he condition

precedent of title had not been met" on or before thirty days after sight or presentment.

American Shale's Br. in Supp. of  Mot. for Summ. J. at 8.  American Shale claims, however, that

the parties had an oral agreement that if the title work showed any discrepancies between the

estimated ownership and actual ownership, then the sight drafts would be cancelled and

American Shale would pay by separate check for only the actual amount due.  *Id*.  American

Shale argues that payment was not due until such verification of the "condition precedent of

title." *Id*.

Certainly, the parol evidence rule does not prohibit proof of additional conditions

precedent as the failure of the condition precedent prevents the contract from ever coming into

existence; since the contract does not exist, the parol evidence rule can have no application.

Richard A. Lord, 11 *Williston on Contracts* § 33:18 (4th ed. West 2007).  But such alleged

additional conditions must meet the same test as any other offered parol terms.  *Id*.  They can

neither be repugnant to the conditions or terms actually stated in writing, nor offered in

substitution for them. *Id.  Cf. Randle v. Overland Texarkana Co.*, 182 Ark. 877, 32 S.W.2d 1064, 1066 (1930) (parol evidence inadmissible to contradict or vary note by showing contemporaneous agreement that person signing should not be bound); *Bonds v. Littrel*, 247 Ark. 577, 580-81, 446 S.W.2d 672, 674 (1969) (proof that a written contract is to be contingent upon the happening of a future event is not excluded by the parol evidence rule if there is nothing in the writing inconsistent with the oral agreement).  Here, American Shale's claim of an agreement (which the Falwells dispute) that the sight drafts could be cancelled and separate checks later tendered clearly is repugnant to and serves as a substitute for the express terms of the sight drafts that title be approved and the final amount of consideration be paid on or before thirty days after sight or presentment.  That being so, American Shale's evidence of intentions or antecedent and contemporaneous agreements at variance with the terms of the sight drafts may not be considered.  *See* Lord, 11 *Williston on Contracts* § 33:35 (an oral agreement that an instrument need not be paid as scheduled or need not be paid on a certain contingency is in violation of the parol evidence rule).

In sum, American Shale's failure to approve title and pay the sight drafts on or before thirty days after sight or presentment was a failure of a condition precedent, the result being that there was no binding Lease between the parties; American Shale simply could not, based on the unambiguous terms of the instruments, rightfully dishonor the sight drafts, hold itself out as the owner of the mineral rights to the world by recording the Lease with the White County Circuit Clerk, and substitute an alternative form of payment at a later date, irrespective of title issues. *Cf. Sun Exploration and Production Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987) (language on face of draft "15 days after sight and upon approval of title," which was dishonored within 15

day period, made approval of title a condition precedent to formation of the lease contract; where

the grantee imposes certain conditions precedent to acceptance, title does not pass under the deed

until fulfillment of such conditions); *Broughton Associates Joint Venture v. Boudreaux*, 70

S.W.3d 324, 328 (Tex.App. – Waco 2002) (no binding contract upon contemporaneous exchange

of lease and bank draft providing "[o]n approval of lease or mineral deed described hereon, and

on approval of title to same by drawee not later than 15 banking days after arrival of this draft at

collecting bank"; the "approval of title" language was condition precedent and no binding

contract was created until draft was funded); *Encina Partnership v. Corenergy, L.L.C.,* 50

S.W.3d 66, 69 (Tex.App. – Corpus Christi 2001) (condition precedent for formation of contract

did not occur where oil exploration company dishonored drafts bearing notation stating that

"[o]n approval of seismic permit or lease described hereon and on approval of title to same by

drawee not later than 3 days after the arrival of this draft at collecting bank" and oil exploration

company disapproved permit within that time period); *Boyer v. Tucker & Baumgardner Corp.*,

143 Mich.App. 361, 365-66, 372 N.W.2d 555, 556 (1985) (payment of 30-day sight drafts a

condition precedent; oil and gas lease null and void upon dishonor of sight drafts, even though

money orders to pay the sight drafts were issued approximately one month later); *Clawson v.

Berklund*, 188 Mont. 48, 53, 610 P.2d 1168, 1171 (1980) (sight drafts providing for payment

"one hundred sixty (160) days after sight and subject to approval of title" was entitled to be

treated as dishonored where payment was not made within 160 days; given that the sight drafts

are to be considered as part of the lease, the parties are presumed to have contracted with

reference to the Uniform Commercial Code, and the lease is to be liberally construed in favor of

the lessor, plaintiff was entitled to a cancellation and recorded release as a result of the breach).[5]

## 2.

Even assuming there remains a binding Lease between the parties, American Shale is not entitled to summary judgment on its alternative argument that the undisputed facts do not warrant the remedy of rescission for failure of consideration.  In Arkansas, a party may rescind a contract based on failure of consideration.  *See Economy Swimming Pool Co. v. Freeling*, 236 Ark. 888, 891, 370 S.W.2d 438, 440 (1963) ("where there is a material breach of contract, substantial nonperformance and entire or substantial failure of consideration, the injured party is entitled to rescission of the contract ...").  American Shale argues that because the Falwells received partial payment of consideration representing an estimated 30% of the total consideration due, rescission is not justified as any breach was not material or substantial and the Falwells thus had more protection than merely the right to sue on an obligation.  It is reasonable, however, to believe that the Falwells relied on the sight drafts to represent cash in hand and that, given the speculative nature of oil and gas exploration, they deserved "more consideration and protection than merely the right to sue on an obligation" that represented at the time 70% of the estimated total consideration due.  *Boyer*, 143 Mich.App. at 365, 372 N.W.2d at 556.  *See also*

---

[5] In setting forth conditions precedent to the legal effectiveness of the Lease, the sight drafts, which represented payments in lieu of delay rentals, effectively operated as an "unless" (or "special limitation") type clause, which describes events that will result in an automatic termination of an oil and gas lease, as opposed to an "or" (or "covenant") type clause, which contains a covenant on the part of the lessee to do one thing or another but does not, upon such failure, automatically terminate the lease.  3 Kuntz, Oil and Gas § 29.1, p. 33-34 (1989); *Phyfer v. San Gabriel Development Corp.*, 884 F.2d 235, 238 (5th Cir. 1989).  *See also Hitzelberger v. Samedan Oil Corp.*, 948 S.W.2d 497, 506 (Tex.App. – Waco 1997) (noting that breach of a condition results in automatic termination of the leasehold estate upon the happening of the stipulated events whereas breach of a covenant does not automatically terminate the estate but instead subjects the breaching party to liability for monetary damages, or in extraordinary circumstances, the remedy of a conditional decree of cancellation).  Thus, even assuming the Lease initially came into existence, failure to pay the sight drafts, like the failure to pay delay rentals, resulted in the automatic termination of the Lease.  *See* 3 Kuntz, Oil and Gas § 29.2(c), p. 36 (the consequences of a failure on the part of the lessee to pay the delay rentals provided for in the "unless" type clause is that the lease automatically terminates).

*Vaughan v. Doss*, 219 Ark. 963, 968, 245 S.W.2d 826, 828-89 (1957) (stating in matters of oil and gas that "equity demands of the lessee strict compliance, and favors 'forfeiture' in order to accomplish justice for the lessor").[6]  Accordingly, the Court does not consider, on this record at least, that dishonor of the sight drafts representing at the time 70% of the estimated total consideration due to be immaterial or insubstantial.

3.

Nor, again assuming there remains a binding Lease between the parties, is American Shale entitled to summary judgment on its alternative argument that the Falwells failed to act in accordance with the terms of the Lease governing notice of alleged breach.[7]  Paragraph 11 of the Lease provides:

> In the event Lessor considers that Lessee is in breach of any of its obligations hereunder, Lessor shall notify Lessee in writing of the facts relied upon as constituting a breach hereof, and Lessee, if in breach hereof, shall have sixty days after receipt of such notice in which to commence the compliance with obligations imposed by virtue of this lease.  Until such time as Lessee has been given the above described written notice and opportunity to cure the asserted breach, Lessee shall not be considered in default under the terms of this lease.

The right to cure under Paragraph 11 relates to "compliance with obligations imposed by virtue of this lease" and "obligations hereunder" and does not speak to sight drafts given in

---

[6] In *Vaughan*, the lessee, in the fourth year of an "unless" lease, mistakenly mailed a delay rental to the wrong bank and the lessor declared a forfeiture.  The lessee corrected the mistake, but the lower court nevertheless cancelled the lease and the Arkansas Supreme Court affirmed, stating that the lessee was at fault for sending the check to the wrong bank and that in oil and gas leases, it would be inequitable not to strictly enforce the forfeiture provision.  219 Ark. at 966-68, 245 S.W.2d at 827-829. *Vaughan* thus demonstrates the extent to which an "unless" type clause will result in the termination of a Lease, even when the condition constituting the special limitation is apparently an innocent mistake.

[7] A general provision in an oil and gas lease requiring notice of breach would not apply to the termination of a lease under an "unless" clause or for failure of a condition precedent because the lease terminates not because of the breach of any promises made by the lessees, but due to the condition constituting the special limitation or failure of the condition precedent. *Fuller v. Rainbow Resources, Inc.*, 744 S.W.2d 232, 234 (Tex.App. – Texarkana 1987) ("unless" clause); *Boyer*, 143 Mich.App. at 365-66, 372 N.W.2d at 556 (condition precedent).

consideration for executing the Lease.  If the Lease were construed to give American Shale the right to supply the remaining consideration sixty days after dishonoring the sight drafts, then the sight drafts which were to be paid at a specific time and place would be of little value and the "on or before 30 days" language would be rendered a nullity.  Rather, a reasonable construction that might be accepted which gives effect to all provisions of both the sight drafts and the Lease (read and construed as one instrument) would be to construe Paragraph 11 of the Lease as pertaining to the obligations under the Lease itself, and the terms and conditions set forth in the sight drafts as pertaining to those instruments.  Accordingly, American Shale is not entitled to summary judgment on grounds the Falwells failed to act in accordance with the terms of the Lease governing matters of alleged breach.

III.

For the foregoing reasons, the Court denies American Shale's motion for summary judgment.  The Court will schedule a status conference by separate Order.

IT IS SO ORDERED this 28th day of November 2007.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE